UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OLAF J. LADANOWSKY,

Plaintiff,

v.

FCA US LLC,

Defendant.

Case No. 24-cv-07197-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: ECF No. 5

Before the Court is Defendant FCA US LLC's ("FCA") motion to dismiss two of Plaintiff's causes of actions. ECF No. 5. The Court will grant the motion in part and deny it in part.

## I.    BACKGROUND[1]

Plaintiff Olaf Ladanowsky is a resident of San Francisco, California who alleges that he acquired a 2021 Jeep Grand Cherokee (the "Subject Vehicle") that was manufactured and/or distributed by Defendant FCA. ECF No. 1-2 ¶ 7 ("Compl."). Ladanowsky entered into a warranty contract with FCA on August 13, 2021. *Id.* "The warranty contract contained various warranties, including but not limited to the bumper-bumper [sic] warranty, powertrain warranty, emission warranty, etc." *Id.* ¶ 8.

Plaintiff identifies several defects that manifested themselves during the warranty period, including "engine defects, electrical defects, climate control defects, body defects; among other defects and non-conformities." *Id.* ¶ 12. Furthermore, the Subject Vehicle was equipped with a 3.6L engine that "was defective, and which may result in loss of power, stalling, engine running

---

[1] For the purpose of resolving FCA's motion to dismiss, the Court accepts as true the allegations in the complaint, ECF No. 1-2. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

United States District Court
Northern District of California

1  rough, engine misfires, failure or replacement of the engine.  It can suddenly affect the driver's

2  ability to control the vehicle or cause a non-collision vehicle fire." *Id.* ¶ 73.  Ladanowsky alleges

3  that FCA failed to successfully repair these defects despite issuing various technical service

4  bulletins and recalls that purported to be able to fix the defects.  *Id.* ¶ 26.  As a result, Ladanowsky

5  "did not become suspicious of [FCA's] concealment of the latent defects and its inability to repair

6  it until shortly before filing of the complaint, when the issue persisted following [FCA's]

7  representations that the Vehicle was repaired." *Id.* ¶ 27.  Ladanowsky alleges that FCA knew of

8  the engine defect prior to his acquisition of the Subject Vehicle through preproduction testing data,

9  early consumer complaints about the engine defect made to FCA and its dealers, testing conducted

10  by FCA in response to the complaints, and warranty repair and part replacements data that FCA

11  received from its dealers.  *Id.* ¶ 75.  Ladanowsky further alleges that FCA and "its agents,

12  representatives, officers, directors, employees, affiliates, and/or dealerships[] concealed the

13  defects, minimized the scope, cause, and dangers of the defects with inadequate TSBs and/or

14  Recalls, and refused to investigate, address, and remedy the defects as it pertains to all affected

15  vehicles." *Id.* ¶ 36.

16        Ladanowsky brings several claims for breach of express and implied warranty under the

17  Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.* and for fraud: (i) violation

18  of the replace or reimburse provisions of California Civil Code §§ 1793.2(d), 1793.1(a)(2); (ii)

19  violation of the service or repair provisions of California Civil Code § 1793.2(b); (iii) violation of

20  the service literature and replacement parts provisions of California Civil Code § 1793.2(a)(3); (iv)

21  violation of the implied warranty of merchantability pursuant to Civil Code §§ 1791.1, 1794,

22  1795.5; (v) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; and (vi)

23  fraudulent inducement—concealment.  Compl. ¶¶ 40–80.  Ladanowsky asserts that the Subject

24  Vehicle is worthless and/or worth a *de minimis* amount due to its defects and that he has suffered

25  at least $35,001.00 in damages.  *Id.* ¶¶ 14, 21.  Ladanowsky seeks actual damages, a civil penalty

26  in the amount of two times his actual damages under California Civil Code § 1794(c) or 1794(e),

27  punitive damages, as well as attorneys' fees and costs.  *See id.* at 18.

28        FCA moves to dismiss Ladanowsky's third (California Civil Code § 1793.2(a)(3)) and

2

1    sixth causes of action (fraudulent inducement).

2    **II.    JURISDICTION**

3        The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 and 28

4    U.S.C. § 1332(a).

5    **III.    LEGAL STANDARD**

6        To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

7    complaint must contain "a short and plain statement of the claim showing that the pleader is

8    entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint

9    lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

10   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

11       "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

12   relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

13   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

14   pleads factual content that allows the court to draw the reasonable inference that the defendant is

15   liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a

16   'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted

17   unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are

18   'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

19   plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

20       In determining whether a plaintiff has met the plausibility requirement, a court must

21   "accept all factual allegations in the complaint as true and construe the pleadings in the light most

22   favorable" to the plaintiff. *Knievel*, 393 F.3d at 1072. But "'the tenet that a court must accept a

23   complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's

24   elements, supported by mere conclusory statements.'" *Gerstle v. Am. Honda Motor Co., Inc.*, No.

25   16-CV-04384-JST, 2017 WL 2797810, at *3 (N.D. Cal. June 28, 2017) (quoting *Iqbal*, 556 U.S. at

26   678). "To be entitled to the presumption of truth, a complaint 'must contain sufficient allegations

27   of underlying facts to give fair notice and to enable the opposing party to defend itself

28   effectively.'" *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)); *see also Eidson v.*

United States District Court
Northern District of California

3

1   *Medtronic, Inc.* 981 F. Supp. 2d 868, 876 (N.D. Cal. 2013) (explaining that the court is not

2   required to "assume the truth of legal conclusions merely because they are cast in the form of

3   factual allegations" (internal quotations omitted)).

4   **IV.    DISCUSSION**

5       **A.    California Civil Code § 1793.2(a)(3)**

6       California Civil Code § 1793.2(a)(3) requires a manufacturer to "make available to

7   authorized service and repair facilities sufficient service literature and replacement parts to effect

8   repairs during the express warranty period."

9       Ladanowsky pleads this cause of action largely by reciting the elements of the claim.  *See*

10  Compl. ¶¶ 51–53.  These bare conclusions are insufficient to state a claim.  Ladanowsky argues

11  that because the complaint describes specific defects of the Subject Vehicle and the time frame

12  they occurred, FCA can review its warranty repair records and warranty claims for the Subject

13  Vehicle.  ECF No. 15 at 9.  He further argues that because he alleges that FCA's authorized repair

14  facilities were unable to resolve the defects, the Court can reasonably infer that there must have

15  been insufficient replacements parts and literature provided.  *See id.*

16      Ladanowsky does not allege any specific facts regarding how FCA failed to provide the

17  necessary service literature and replacement parts to FCA's repair facilities.  He does not allege

18  when he brought his Subject Vehicle to any authorized service and repair facility or how any such

19  facility was unable to repair the Subject Vehicle.  While "[i]nsufficient literature and replacement

20  parts is a possible explanation among many other possible explanations for why [FCA's]

21  dealership could not allegedly repair the vehicle," Ladanowsky "includes no factual allegations

22  that would make this a plausible claim."  *See Correa v. Ford Motor Co.*, No. 2:23-CV-02389-AB-

23  PD, 2024 WL 2107719, at *2 (C.D. Cal. Apr. 11, 2024).  Indeed, Ladanowsky does not even

24  explain whether FCA failed to provide service literature or replacement parts to adequately state a

25  claim.  *See Farrales v. Ford Motor Co.*, No. 21-CV-07624-HSG, 2022 WL 1239347, at *7 (N.D.

26  Cal. Apr. 27, 2022).  Ladanowsky merely recites the applicable statutory language, and

27  "conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."  *Adams v.*

28  *Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  The Court thus dismisses Ladanowsky's claim

United States District Court
Northern District of California

4

1    under California Civil Code § 1793.2(a)(3) with leave to amend.

2    **B.    Fraudulent Inducement**

3        Federal Rule of Civil Procedure 9(b) requires a party "alleging fraud or mistake" to "state

4    with particularity the circumstances constituting fraud or mistake," but allows "[m]alice, intent,

5    knowledge, and other conditions of a person's mind" to "be alleged generally."  Fed. R. Civ. P.

6    9(b).  Claims based on a fraud by omission theory are subject to a lower pleading standard than

7    those based on affirmative misrepresentations, as "'a plaintiff in a fraud by omission suit will not

8    be able to specify the time, place, and specific content of an omission as precisely as would a

9    plaintiff in a false representation claim,' and such a claim 'will not be dismissed purely for failure

10   to precisely state the time and place of the fraudulent conduct.'"  *Holley v. Gilead Scis., Inc.*, 379

11   F. Supp. 3d 809, 817 (N.D. Cal. 2019) (quoting *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088,

12   1098–99 (N.D. Cal. 2007)).

13       The elements of a fraud claim in California are "(1) misrepresentation (false

14   representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to

15   defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Robinson*

16   *Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).  Ladanowsky asserts that FCA

17   fraudulently concealed material facts regarding the Subject Vehicle's engine defect.  *See* ECF No.

18   15 at 11-12; Compl. ¶ 73.

19       **1.    Duty to Disclose**

20       Under California law, "to be actionable[,] the omission must be contrary to a

21   representation actually made by the defendant, or an omission of a fact the defendant was obliged

22   to disclose."  *Hodsdon v. Mars*, 891 F.3d 857, 861 (9th Cir. 2018) (emphasis omitted) (quoting

23   *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006)).  In *Hodsdon*, the

24   Ninth Circuit explained that a plaintiff sufficiently pleads a duty to disclose where: (1) the plaintiff

25   alleges the omission was material; (2) the alleged defect was central to the product's function; and

26   (3) the defendant (a) is plaintiff's fiduciary, (b) has "exclusive knowledge" of material facts, (c)

27   "actively conceals" a material fact, or (d) makes misleading partial representations.  *Id.* at 863

28   (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).  "The last *Limandri* factor is

United States District Court
Northern District of California

5

1    applicable to a partial, not pure, omission claim." *Anderson*, 500 F. Supp. 3d at 1014.

2        FCA argues that it had no duty to disclose the alleged omission to Ladanowsky because

3    there was no transactional relationship between them, and the dealership that Ladanowsky

4    purchased the Subject Vehicle from was not FCA's agent.  ECF No. 5 at 11; ECF No. 7 at 6–7.

5    But as Ladanowsky points out, "'a vendor has a duty to disclose material facts not only to

6    immediate purchasers, but also to *subsequent purchasers* when the vendor has reason to expect

7    that the item will be resold.'"  ECF No. 15 at 15 (quoting *OCM Principal Opportunities Fund,*

8    *L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 859 (2007), *as modified* (Dec. 26,

9    2007) (emphasis in original)).  As a car manufacturer, FCA cannot shirk its duty to disclose

10   material facts to subsequent purchasers of its vehicles just because consumers purchase those

11   vehicles from FCA's dealerships rather than from FCA directly.

12       Moreover, Ladanowsky adequately alleged that FCA had a duty to disclose because it

13   possessed superior knowledge of material facts and actively concealed the material facts.

14   Ladanowsky specifically alleges that FCA had knowledge of the engine defect "through sources

15   not available to consumers," including pre-production testing data, consumer complaints about the

16   engine defect, testing conducted by FCA in response to these complaints, and aggregate warranty

17   data compiled from FCA's dealers.  Compl. ¶ 75.  Ladanowsky further alleges that FCA covered

18   up the known defects by failing to notify owners of the affected vehicle and instead issuing

19   unsuccessful recalls and technical service bulletins.  *Id.* ¶¶ 26–27, 36.

20       Ladanowsky sufficiently pleads the other elements of a fraud by omission claim.  He

21   alleges that the omitted fact—the Subject Vehicle's defective engine—was material because it

22   affected the vehicle's safety and was central to the functioning of the product.  *See id.* ¶ 73.  And

23   he alleges that he "would not have leased and/or purchased [the Subject Vehicle] had [he] known

24   the true facts about the Engine Defect," *id.* ¶ 79, which is sufficient to demonstrate reliance.  *See*

25   *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("A plaintiff may [prove reliance

26   on an omission] by simply proving 'that, had the omitted information been disclosed, one would

27   have been aware of it and behaved differently.'") (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082,

28   1093 (1993)).

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2.    Economic Loss Rule

FCA argues that the economic loss rule bars Ladanowsky's fraud by omission claim because he cannot recover in tort for "'financial harm unaccompanied by physical or property damage.'"  ECF No. 5 at 13 (quoting *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022)).  It contends that Ladanowsky's sixth cause of action would more properly be characterized as a claim for fraud in the *performance* of FCA's warranty obligations rather than fraud in the inducement of the contract, citing to the allegations in the complaint regarding FCA's ongoing fraud and failure to resolve the defects.  ECF No. 17 at 9–10.[2]

"The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co.*, 34 Cal. 4th at 988.  One exception to the economic loss doctrine is "where the contract was fraudulently induced" due to an affirmative misrepresentation.  *Id.* at 989–91 (citation omitted).

Two recent California cases address whether the fraud exception to the economic loss rule extends to fraudulent concealment claims.  First, in *Rattagan v. Uber Techologies, Inc.*, the California Supreme Court held that "a plaintiff may assert a cause of action for fraudulent concealment based on conduct occurring *in the course of a contractual relationship*, if the elements of the claim can be established independently of the parties' contractual rights and obligations and the tortious conduct exposes the plaintiff to a risk of harm beyond the reasonable contemplation of the parties when they entered into the contract." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 45 (2024) (emphasis added).

Second, in *Dhital v. Nissan North America, Inc.*, a California appellate court held that

---

[2] FCA argues in its reply brief that even if Ladanowsky properly pleads a fraudulent inducement claim, his claim is barred by the three-year statute of limitations under Code Civil Procedure Section 338(d).  ECF No. 17 at 10 n.1.  As a preliminary matter, the Court notes that FCA did not properly raise this argument in its initial motion.  *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 912 n.8 (N.D. Cal. 2021) ("Because it was raised in reply, the Court does not reach this argument.").  Furthermore, Section 338(d) provides that a cause of action for fraud does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  Here, Ladanowsky alleges in the complaint that he "did not discover [FCA's] wrongful conduct alleged herein until shortly before the filing of the complaint, as the Vehicle continued to exhibit symptoms of defects following FCA's unsuccessful attempts to repair them."  Compl. ¶ 30.

1  "concealment-based claims for *fraudulent inducement* are not barred by the economic loss rule."

2  84 Cal. App. 5th 828, 840 (2022) (emphasis added).[3]  The facts alleged in *Dhital* are nearly

3  identical to those alleged here.  In *Dhital*, the plaintiffs alleged that after purchasing a car from a

4  Nissan dealership, they took the car to an authorized Nissan repair facility because of transmission

5  problems.  *Id.* at 833.  Because the transmission problems persisted, the plaintiffs eventually

6  stopped using the car altogether.  *Id.*  The plaintiffs there alleged that Nissan "knew or should have

7  known about the safety hazard posed by the defective transmissions before the sale of [the

8  affected] vehicles from premarket testing [and] consumer complaints . . . ."  *Id.* at 834.  The

9  plaintiffs alleged that Nissan, "by intentionally concealing facts about the defective transmission,

10  fraudulently induced them to purchase a car."  *Id.* at 838.  The court held that the fraudulent

11  inducement claim fell within the exception to the economic loss rule recognized by the California

12  Supreme Court in *Robinson*.  *Id.* at 843.  The court reasoned that, as in *Robinson*, fraudulent

13  inducement—whether achieved by intentional concealment or by intentional affirmative

14  misrepresentations—constitutes tortious activity independent of the contract and is thus outside of

15  the economic loss rule.  *Id.* at 841.

16       Here, as in *Dhital*, Ladanowsky alleges that FCA engaged in fraudulent conduct—

17  independent of the alleged warranty breaches—to induce him to purchase the subject vehicle.

18  Ladanowsky specifically alleges that FCA had knowledge of the engine defect prior to

19  Ladanowsky's purchase of the vehicle but did not disclose the defect to him.  *See* Compl.

20  ¶¶ 75–77.  While Ladanowsky also alleges that FCA continued concealing the defects after the

21  purchase of the vehicle, this cause of action focuses on the fraudulent inducement.  The reasoning

22  in *Dhital* thus applies, and the economic loss rule does not bar Ladanowsky's claim.

23                                          **CONCLUSION**

24       For the foregoing reasons, the Court grants FCA's motion to dismiss as to Ladanowsky's

25  claim under California Civil Code § 1793.2(a)(3) and denies the motion as to Ladanowsky's

26

27  [3] The California Supreme Court granted review of *Dhital* on February 1, 2023, 304 Cal. Rptr. 3d
    82, but has yet to issue a decision.  While this Court holds that the economic loss rule does not bar

28  Ladanowsky's fraudulent concealment claim, if the California Supreme Court decides differently,
    the Court will permit FCA to renew its motion as to the fraud claim.

United States District Court
Northern District of California

fraudulent inducement claim.  Within 21 days from this order, Ladanowsky may file an amended complaint solely to cure the deficiencies identified in this order.  If Ladanowsky does not file an amended complaint, the case will proceed without his claim under California Civil Code § 1793.2(a)(3).

**IT IS SO ORDERED.**

Dated:  December 30, 2024



_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California